UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYNTHIA RAMOS, as Legal Guardian of W.R., and CYNTHIA RAMOS, individually,

Plaintiff,

-against-

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants.

Case No. 1:25-cv-05224 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Cynthia Ramos ("Plaintiff") brings this action individually and on behalf of her child, W.R., pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, against the New York City Department of Education (the "DOE") and Melissa Aviles-Ramos in her official capacity as former DOE Chancellor (together with the DOE, "Defendants"). Before the Court are the parties' cross-motions for summary judgment regarding the decision of a State Review Officer ("SRO"), which affirmed the decision of an Impartial Hearing Officer ("IHO"), that Plaintiff is not entitled to reimbursement for the full costs of W.R.'s tuition and certain other services at the International Academy for the Brain ("iBrain") during the 2024-25 school year. For the following reasons, Plaintiff's motion is DENIED, and Defendants' motion is GRANTED.

## BACKGROUND

### I. The IDEA

The IDEA requires that states receiving federal funding provide "[a] free appropriate public education" — also known as a "FAPE" — "to all children with disabilities." 20 U.S.C.

§ 1412(a)(1); *see R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 174-75 (2d Cir. 2012). FAPEs are not one-size-fits-all; they "consist of special education and related services tailored to meet the unique needs of a particular child, . . . provided in conformity with an individualized education program, or IEP," and each IEP is created by a Committee on Special Education ("CSE"). *Hardison v. Bd. of Educ.*, 773 F.3d 372, 376 (2d Cir. 2014) (quoting *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 214 (2d Cir. 2014)). The IEP is "the centerpiece of the [IDEA]'s education delivery system," and, therefore, "Congress repeatedly emphasized throughout the [IDEA] the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe*, 484 U.S. 305, 311 (1988).[1]

A parent who "believes the state has failed to provide their child with a FAPE . . . may choose to 'enroll the child in a private school and seek reimbursement for the cost of the private school education from the local education agency.'" *Cruz v. Banks*, 134 F.4th 687, 691 (2d Cir. 2025) (quoting *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 831 (2d Cir. 2014)). To prevail on a reimbursement claim, the parent "must first pursue that claim in a due process hearing before an [IHO] and may appeal an adverse ruling to a[n SRO]," and then either the parent or the state "'may . . . seek review of the SRO's decision' in court." *Id.* (alterations adopted) (quoting *C.L.*, 744 F.3d at 831). The parent initiates this claim process by "present[ing] a complaint" to the state's educational agency. 20 U.S.C. § 1415(b)(6)(A) (providing "[a]n opportunity for any party to present a complaint[] with respect to . . . the provision of a [FAPE]"); *see id.* § 1415(f)(1)(A) (providing "an opportunity for an impartial due process

[1] *Honig* refers to the IDEA using its then-operative name, the Education of the Handicapped Act or "EHA." *Honig*, 484 U.S. at 309. Congress changed the statute's name in 1990, and thus the Court "refer[s] to the statute and its predecessor versions as the IDEA." *A.J.T. ex rel. A.T. v. Osseo Area Schs.*, 605 U.S. 335, 340 n.1 (2025).

hearing" "[w]henever a complaint has been received under subsection (b)(6)"); *see also* *Montalvan v. Banks*, 707 F. Supp. 3d 417, 424 n.7 (S.D.N.Y. 2023) (referring to such a complaint as a "due process complaint [('DPC')]," which, despite its name, is "unrelated to the concept of constitutional due process" (quoting *R.E.*, 694 F.3d at 175)). An "'important' consideration" in the process of reviewing such a claim for reimbursement, however, "is 'whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA.'" *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 330 (2d Cir. 2024) (alteration adopted) (quoting *C.L.*, 744 F.3d at 840).

## II. Relevant Facts

Plaintiff is the legal guardian of W.R., a child with a disability as defined by the IDEA. Def. RSUF ¶¶ 1-2; *see* 20 U.S.C. § 1401(3). She filed a DPC for the 2024-25 school year, asserting that the DOE failed to provide W.R. with a FAPE. Def. RSUF ¶¶ 16-17. Plaintiff's requested relief for that claim included a pendency order, "direct funding to iB[rain]" to cover tuition and various related services, and funding for transportation and nursing services. Dkt. 22-1 at R0026. On August 20, 2024, the IHO issued a pendency order specifying that W.R.'s pendency program at iBrain includes "[t]uition and related services" for the twelve-month 2024-25 school year, and that the DOE would provide transportation for W.R. throughout the school year. Def. RSUF ¶¶ 21-23; *see also* Dkt. 22-2 at R0045.

### A. The IHO's Decision

The IHO held a hearing on Plaintiff's DPC on September 26, 2024, and issued a written decision on October 15, 2024. *See* Dkt. 22-1 at R0023. In that decision, the IHO found that Plaintiff had met the "low" bar of establishing the appropriateness of W.R.'s placement at iBrain. *See* Dkt. 22-2 at R0033. However, the IHO noted that "[t]he record regarding [iBrain] [wa]s scanty" and consisted largely of its deputy director's affidavit, which contained

"primarily . . . statements that offer[ed] little insight" into the school's educational programming and services. Dkt. 22-1 at R0032.

The IHO also found that the DOE failed to provide W.R. with a FAPE for the 2024-25 school year, because the DOE's IEP did not recommend nursing services for W.R. *Id.* at R0031-32. In so finding, the IHO acknowledged the DOE's argument that Plaintiff had failed to "submit the medical accommodation and medication administration forms that would have informed the selection of nursing services and transportation accommodations and services." *Id.* at R0030. Indeed, the IHO found that Plaintiff "confirmed that she was aware that the DOE sent [these] forms for her to complete" but "repeated[ly] fail[ed] to provide" them to the DOE. *Id.* at R0031. Still, the IHO reasoned, the DOE knew that W.R. "has significant medical needs," and the DOE was "empowered to make a decision with respect to nursing services" even in the absence of the missing forms; yet the DOE "did not override the triggering event (parental submission of medical forms) to furnish the IEP team with a medical professional capable of making these recommendations." *Id.* The DOE's failure "render[ed] the IEP flawed, as [W.R.] can neither attend class nor ride the school bus without such a support." *Id.* at R0031-32.

Even though the IHO held that Plaintiff's failure to provide medical forms did not preclude a finding that the DOE failed to provide a FAPE, the IHO did find that Plaintiff's failure was the "most notabl[e]" factor demonstrating that she "did not cooperate with the DOE" in W.R.'s placement. Dkt. 22-2 at R0034. That failure "hampered the IEP team's ability to craft a medically safe program for her child" and amounted to "stonewalling of the IEP team." *Id.* The IHO made other findings with respect to Plaintiff's level of cooperation. Indeed, although Plaintiff additionally alleged that the DOE "failed to provide a school location letter," the DOE had submitted into the record a copy of the school location letter it emailed Plaintiff. Dkt. 22-1 at R0029. Confronted with this evidence, Plaintiff claimed "she never received" the email,

despite testifying that it had been sent to her correct email address, and despite other record evidence demonstrating she "received other emails at this address." *Id.* The IHO noted that it was "implausible to suggest in 2024 that [Plaintiff] does not know to check her spam or junk email folder[,] particularly when engaged in substantial email activity in support of her disabled child." *Id.* The IHO found further support for Plaintiff's lack of cooperation in her "less-than-credible testimony" regarding her financial obligations to iBrain should the DOE prevail, "her failure to visit the public school placement pursuant to the school location letter [she] denied receiving[,] and her statement that she would never place her child in a public school." *Id.* at R0034. This evidence, while "in no way determinative, . . . paint[ed] a picture of a parent who [wa]s disengaged from the NYC DOE's process and procedure." *Id.* Accordingly, the IHO held that "the weight of the evidence establishe[d] that [Plaintiff] did not cooperate with the DOE," and therefore "the equities support[ed] a reduction of funding." *Id.* The IHO ordered a 50% reduction of the DOE's funding requirement for W.R.'s placement and program, registered nursing services, transportation services, and iBrain tuition deposit. *Id.* at R0035.

Finally, regarding Plaintiff's request for a pendency order, the IHO explained that she had "sent the [p]arties a Pendency Order" on August 20, 2024, which "granted pendency . . . and consisted of tuition and related services at [iBrain] for the twelve month school year as well as transportation to be provided by the DOE's Office of Pupil Transportation." *Id.* at R0026. The IHO noted that Plaintiff "sent the [p]arties an email" on August 26, 2024, arguing that the IHO "should change" that pendency order, but the IHO advised that "[t]he proper remedy is to appeal." *Id.* at R0026 n.4.

**B. The SRO's Decision**

Both Plaintiff and the DOE appealed the IHO's post-hearing decision to the SRO. *Id.* at R0009. On February 25, 2025, the SRO affirmed the IHO's decision. *Id.* at R0022.

Plaintiff argued on appeal that, in reducing the DOE's funding requirement based on her lack of cooperation, "the IHO ignored the fact that [she] participated in the March 2024 CSE meeting" and that the DOE "had ample opportunity to reconvene for a subsequent CSE meeting or[,] in the alternative[,] . . . 'had sufficient information from prior medical accommodation forms to make proper recommendations.'" *Id.* at R0020. The SRO acknowledged that "[t]he hearing record d[id] support [Plaintiff]'s contention that she submitted in the March 2024 CSE meeting, iBrain did provide the [DOE] with re[c]ent evaluative information regarding [W.R.]'s present levels of performance, and [Plaintiff] did provide the [DOE] with adequate notice of her intention to place [W.R.] at iBrain for the 2024-25 school year at [the DOE's] expense." *Id.* But the SRO weighed these facts against evidence of Plaintiff's non-cooperation, namely her failure to provide medical forms despite the DOE "ma[king] multiple requests" for them, and despite the importance of these forms in potentially "support[ing] a recommendation for 1:1 nursing services." *Id.* at R0020-21. Moreover, the SRO noted that, despite Plaintiff's argument that the DOE should have used information from "prior medical accommodation forms, the only other [such] forms in the hearing record were signed by [W.R.]'s physician in November 2022 and they d[id] not indicate a request for 1:1 nursing services." *Id.* at R0020 n.9. Finally, although the SRO did not excuse the DOE from its failure to provide a FAPE, he did note that the IHO "attributed [that] failure, in part, to [Plaintiff]'s 'stonewalling' the CSE by not providing the requested medical information." *Id.* at R0021. On appeal, Plaintiff did not challenge the IHO's finding that she failed to submit these medical forms, but rather "assert[ed] that [her] failure . . . should be ignored as it was the [DOE]'s obligation to offer [W.R.] a FAPE." *Id.* at R0021.

The SRO also acknowledged that both Plaintiff and the DOE raised arguments concerning the IHO's pendency order, but found that neither party had done so properly. As to

Plaintiff, the SRO held that her "broad and conclusory" "alleg[ation] that the 'IHO deferred action on pendency without basis' . . . failed to raise any challenges related to the IHO's interim order on pendency." *Id.* at R0017. Plaintiff submitted to the SRO "an email chain . . . as additional evidence" concerning that pendency order, but the SRO declined to consider it because it "pertain[ed] to [W.R.]'s pendency, an issue not properly before" the SRO. *Id.* at R0017 n.7. The SRO further noted that Plaintiff had not submitted these emails to the IHO in proper form, which undermined any assertion that "the IHO erred in not responding to [Plaintiff]'s request for corrections" to the pendency order. *Id.* Likewise, because the DOE sought "clarification" of the IHO's pendency order but "d[id] not specify what specific change" to the order it sought, the SRO declined "to disturb or further address" the pendency order. *Id.* at R0018.

## III. Procedural History

On June 24, 2025, Plaintiff filed a complaint in this Court, seeking reversal of the SRO's decision. *See* Dkt. 1 at ¶¶ 106-17. On November 24, 2025, Plaintiff moved for summary judgment on that claim. *See* Dkt. 18; Dkt. 19 ("Pl. SUF"); Dkt. 20 ("Br."); Dkt. 22. On the same day, she filed a letter-motion seeking to maintain the administrative record under seal. *See* Dkt. 21. On February 27, 2026, the DOE filed its opposition to Plaintiff's summary judgment motion and cross-moved for summary judgment. *See* Dkt. 28 ("DOE Opp."); Dkt. 29 ("Def. RSUF"). On March 20, 2026, Plaintiff filed a memorandum of law in opposition to the DOE's cross-motion and reply in further support of her own motion. *See* Dkt. 31 ("Pl. Opp. & Reply"); Dkt. 31-1 ("Pl. RSUF"). On April 3, 2026, the DOE filed a reply. *See* Dkt. 32 ("DOE Reply"). The motions are fully briefed.

## LEGAL STANDARD

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). Where, as here, the appealed-from order concerns reimbursement, courts "apply the three-part *Burlington/Carter* test and consider: '(1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) the equities.'" *Cruz*, 134 F.4th at 691-92 (omission adopted) (footnote omitted) (quoting *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014)).

"[D]istrict courts must accord deference to state administrative agencies when reviewing their IDEA decisions." *C.L.*, 744 F.3d at 838. "The deference owed, however, is not absolute as it 'will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court.'" *Id.* (quoting *M.H.*, 685 F.3d at 244). Indeed, "deference is not warranted" to an SRO on "issues of law," *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005) (alteration adopted) (citations omitted), and "district courts in the Second Circuit regularly determine that 'state agency conclusions on the equities analysis are entitled to less deference,'" *Bd. of Educ. v. C.S.*, No. 23-cv-08182 (KMK), 2024 WL 4252499, at *20 (S.D.N.Y. Sept. 20, 2024) (quoting *Z.A.R. v. City of New York*, No. 19-cv-02615 (CBA) (PK), 2022 WL 4536241, at *4 (E.D.N.Y. Sept. 28, 2022)), because "balancing of the equities [is] a matter as to which district courts not only have particular expertise but also broad discretion,"

*Mejia v. Banks*, No. 23-cv-06401 (DEH), 2024 WL 4350866, at *7 (S.D.N.Y. Sept. 30, 2024) (quoting *A.R. ex rel. F.P. v. N.Y.C. Dep't of Educ.*, No. 12-cv-04493 (PAC), 2013 WL 5312537, at *5 (S.D.N.Y. Sept. 23, 2013)), *aff'd sub nom. Mejia v. Samuels*, No. 24-2901, 2026 WL 554627 (2d Cir. Feb. 27, 2026) (summary order). Therefore, "the 'substantial deference' that the IDEA requires for matters of educational policy is inapplicable to the equitable balancing called for at the third step of the *Burlington/Carter* test," and district courts must "(1) 'engage in an independent review of the administrative record,' and (2) 'make a determination of the balance of the equities based on a preponderance of the evidence.'" *Ferreira*, 120 F.4th at 332-33 (alteration adopted) (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007)).

## DISCUSSION

Plaintiff seeks a reversal of the SRO's decision for two primary reasons. First, Plaintiff argues that the SRO erred in affirming the IHO's reimbursement reduction based on equitable considerations. *See* Br. at 13-15. Second, Plaintiff argues that she is entitled to full reimbursement "as pendency for the 2024-2025 school year." *Id.* at 15; *see id.* at 15-18. The Court, addressing these arguments in turn, disagrees with Plaintiff on both.

### I. The Equitable Considerations Support Reduction

Plaintiff first argues that the SRO's reimbursement reduction was based solely on her "alleged 'stonewalling' of the CSE by failing to provide medical forms" and should, therefore, be reversed, because the SRO ignored other ways in which she did participate in W.R.'s IEP planning process. *Id.* at 13; *see also id.* at 13-15. The Court disagrees.

As discussed above, "whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA" is an "[i]mportant" factor in "the equitable considerations." *Ferreira*, 120 F.4th at 330 (quoting *C.L.*, 744 F.3d at 840). Indeed,

the IDEA specifically provides that "[t]he cost of reimbursement . . . may be reduced or denied[] upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii)(III). The IHO made such a finding here, based in part on Plaintiff's "notabl[e]" failure to submit medical forms to the CSE, which "hampered the IEP team's ability to craft a medically safe program for her child" and amounted to "stonewalling of the IEP team," demonstrating that Plaintiff "did not cooperate with the DOE" in W.R.'s placement. Dkt. 22-2 at R0034. The SRO affirmed and, citing to the record, noted that the DOE "made multiple requests for [that] medical information from [Plaintiff]," which "could have supported a recommendation for 1:1 nursing services"; that, despite Plaintiff's claim at the due process hearing that she had in fact submitted "a series of district medical forms" to the CSE, she had been unable to "recall when she sent the forms to the CSE, or who she sent the forms to"; and that, on appeal before the SRO, Plaintiff "ha[d] not challenged" the IHO's factual finding that she had indeed "not provide[d] the medical forms to the CSE," but instead merely insisted that her failure "should be ignored." Dkt. 22-1 at R0020-22. The IHO had also found that Plaintiff gave "less-than-credible testimony" regarding her financial obligations to iBrain should the DOE prevail, had failed "to visit the public school placement pursuant to the school location letter [she] denied receiving," and had testified "that she would never place her child in a public school." Dkt. 22-2 at R0034. The IHO viewed this evidence, together with Plaintiff's failure to submit medical forms, as demonstrating Plaintiff's "disengage[ment] from the NYC DOE's process and procedure." *Id.* The SRO affirmed these determinations, inasmuch as he affirmed the IHO's determination that "the weight of the evidence showed that [Plaintiff] did not cooperate with the [DOE]," which was "determinative as an equitable factor." Dkt. 22-1 at R0021-22.

Plaintiff faults the SRO for "ignor[ing] [her] documented participation in the March 2024 IEP meeting[;] the provision by iBrain, to the CSE, of documentation of [W.R.]'s program[;] and

[Plaintiff]'s expressed willingness to consider the DOE's recommendations." Br. at 13. The SRO's opinion largely refutes that contention. Indeed, the SRO expressly acknowledged Plaintiff's participation in the March 2024 IEP meeting. *See* Dkt. 22-1 at R0020. It is unclear what Plaintiff refers to by "documentation of [W.R.]'s program," Br. at 13, but if she means iBrain's providing the CSE with "evaluative information regarding [W.R.]'s present levels of performance," then the SRO expressly considered that, too, *see* Dkt. 22-1 at R0020. If she means information concerning the educational programming iBrain offers, it is true that the SRO's decision omits reference to such information, but that is presumably because Plaintiff put so little of it into the record in the first instance. *See id.* at R0032 (IHO finding that "[n]o schedule was provided" of iBrain's educational programming, that "[t]he record regarding [iBrain] [wa]s scanty," and that the only "source of information" about iBrain was its "deputy director's testimony," which "[u]nfortunately . . . offer[ed] little insight"). In any event, nothing before this Court suggests that the SRO "ignored" these aspects of Plaintiff's cooperation; the SRO considered them and, ultimately, affirmed the IHO's determination that they did not weigh sufficiently heavily against Plaintiff's failure to provide medical forms to the CSE. *See id.* at R0020-22.

Plaintiff is correct, in a sense, that the SRO's decision does not discuss her "expressed willingness to consider the DOE's recommendations," Br. at 13, but Plaintiff does not explain how or when she expressed that willingness or the specific recommendations to which she refers, and she does not cite to anything in the record that might aid the Court in understanding her argument. Having reviewed the record without Plaintiff's guidance, the Court finds ample evidence that Plaintiff was frequently *un*willing to consider the DOE's recommendations. For example, in her Rule 56.1 Statement filed with this Court, Plaintiff stated (citing, as evidence, only her own allegation in her complaint before this Court) that the DOE had failed to "provide[]

transportation" to W.R. in accordance with the IHO's pendency order, thus "compel[ing]" Plaintiff "to use Sisters Transportation so that W.R. can attend school." Pl. SUF ¶ 32 (citing Dkt. 1 ¶ 103). The DOE has submitted a sworn declaration disputing this contention and representing that, in fact, Plaintiff "refused to utilize" the transportation services the DOE offered. *See* Kapoor Decl. ¶¶ 5-6. The record appears to confirm the DOE's representation. At the due process hearing, Plaintiff testified that she never contacted the DOE to inquire about transportation, and that the DOE never contacted her to offer transportation, either by letter or email. *See* Dkt. 22-63 at R1217-18, 150:18-151:4. But in response, the DOE confronted her with a July 11, 2024 letter addressed to Plaintiff's home and offering that exact service, and Plaintiff denied ever receiving it. *Id.* at R1218-19, 151:5-152:16. The letter was additionally sent to Plaintiff's counsel at the Brain Injury Rights Group, the same firm that represents Plaintiff in this action; yet, Plaintiff testified, no one from that firm spoke to Plaintiff about this transportation plan, either. *Id.* at R1219-20, 152:17-153:1. But iBrain *did* introduce Plaintiff to Sisters, she testified. *Id.* at R1217, 150:14-17. iBrain additionally introduced Plaintiff to a company called B&H for nursing services, but never spoke to her "about any other nursing company." *Id.* at R1216, 149:23-24; *see id.* at R1215-16, 148:4-149:24. To the extent Plaintiff has asserted in this Court that she was willing to consider the DOE's recommendations, this testimony suggests otherwise, at least with respect to transportation and nursing services. Indeed, Plaintiff appears to have been interested only in services offered by iBrain, irrespective of what comparable services the DOE might offer or help coordinate.[2] Plaintiff further testified

[2] Plaintiff's testimony is consistent with the recent conclusion, reached by another court in this District, that "the fact that iBrain uses Sisters Travel and B&H Health Care to provide transportation and nursing services to its students does not appear to be a coincidence," as Sisters's founder is iBrain's director's wife, and iBrain's director "is *also* the founder and senior attorney of L[iberty] [and] F[reedom] L[egal] G[roup] (formerly known as the Brain Rights Injury Group)." *Donohue v. Samuels*, No. 26-cv-05329 (JMF), 2026 WL 2453562, at *4

at the due process hearing that she would *not* "consider placement at a public school and changing from [iBrain]" for the 2024-25 school year, *id.* at R1198, 131:1-4, and while she testified that she had toured public schools in the past and would have considered doing so again if the DOE had identified one for her in a school location letter, *id.* at R1197, 130:12-20, she also denied receiving the school location letter that the DOE sent, for that express purpose, to her at the email address she confirmed to be hers, *id.* at R1194-96, 127:2-129:19.[3] The IHO explicitly found that Plaintiff's testimony that she had not received this letter was "implausible." Dkt. 22-1 at R0029. This testimony further undermines Plaintiff's contentions that she expressed willingness to consider the DOE's recommendations and that the SRO's decision is deficient for its failure to credit that willingness.

Therefore, the Court's independent review of the record supports the SRO's conclusion that Plaintiff's lack of cooperation was an equitable factor supporting a reduction in her reimbursement. Indeed, courts routinely uphold an SRO's reimbursement reduction based on the equities where the record demonstrates a parent's overall lack of cooperation.[4] *See, e.g.*,

(S.D.N.Y. Aug. 24, 2026). Moreover, Plaintiff was unable to explain why her current transportation contract with Sisters had increased by "approximately $28,000" from the previous year, or why her current nursing contract with B&H had increased by more than $37,000 from the previous year — indeed, she testified, she had no idea these rates had increased at all. *See* Dkt. 22-63 at R1210, 143:3-6; R1211, 144:5-9; R1213, 146:18-22 (nursing services); *id.* at R1220, 153:14-18; R1223, 156:13-19 (transportation services).

[3] The Court does note its disagreement with the IHO's apparent characterization of this testimony as Plaintiff's "statement that she would never place her child in a public school." Dkt. 22-2 at R0034. That was not quite Plaintiff's testimony. Certainly, she testified that she would not consider placing W.R. in public school for the school year at issue, *see* Dkt. 22-63 at R1198, 131:1-4, and the Court views that testimony as one aspect of Plaintiff's unwillingness to consider the DOE's recommendations. But that is not the same as Plaintiff stating she would *never* accept a public school placement. This distinction does not change the Court's analysis, but the Court notes it nonetheless for purposes of clarifying the record.

[4] Plaintiff states, purporting to cite *C.L.*, that "[t]he Second Circuit has repeatedly held that equitable reductions are appropriate only where parental conduct is 'egregious,' 'obstructive,' or

*Maysonet v. N.Y.C. Dep't of Educ.*, No. 22-cv-01685 (LGS), 2023 WL 2537851, at *4 (S.D.N.Y. Mar. 16, 2023) (finding parents' failure to provide CSE with student's "progress reports once a[n IEP] meeting was scheduled," despite promising to do so "multiple times," "was unreasonable and a negative equitable consideration under the IDEA, supporting the SRO's deduction"); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 675-76 (S.D.N.Y. 2011) (weighing evidence of parents' cooperation against evidence of parents' lack of cooperation, noting that "this is not a case where the [p]arents completely refused to cooperate" but that "this is also far from a case where the [p]arents sought to fully cooperate with the District," and finding, in sum, "that equitable considerations justif[ied] reducing the [p]arents' tuition reimbursement request by 75%"); *Bettinger v. N.Y.C. Bd. of Educ.*, No. 06-cv-06889 (PAC), 2007 WL 4208560, at *9 (S.D.N.Y. Nov. 20, 2007) (finding that "the parents' lack of cooperation after [a certain date] and their refusal to visit a state-approved, non-public school frustrated the placement process . . . in order to gain tuition reimbursement for their school of choice from the courts" and, thus, that the parents were "not entitled to tuition reimbursement"); *Donohue v. N.Y.C. Dep't of Educ.*, No. 20-cv-01942 (ALC) (KHP), 2021 WL 4481344, at *10 (S.D.N.Y. Sept. 30, 2021) (finding equities weighed against plaintiff who missed CSE meetings and evaluation appointments and who "failed, after numerous requests over email, phone, and by letter, to provide progress reports and other documentation in preparation for the June CSE Meeting to the district"); *Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.*, 373 F. Supp. 2d 402, 416 (S.D.N.Y. 2005) (finding equities weighed

'directly responsible' for the denial of FAPE." Pl. Opp. & Reply at 6 (purportedly quoting *C.L.*, 744 F.3d at 840); *see also id.* at 2, 4 (similar). The Court has reviewed *C.L.* and finds no such holding, or even language that could be mistaken for such a holding, in that case. Indeed, the words "egregious," "obstructive," or "directly responsible" do not appear anywhere in *C.L.* — instead, the Second Circuit held much more broadly that "[i]mportant to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." *C.L.*, 744 F.3d at 840.

against plaintiffs who "never had the slightest intention of allowing the child to be educated in the public school, and did everything possible so that they could frustrate a timely review of [the child's] condition"); *Neske v. Porter*, No. 21-cv-10363 (VEC), 2022 WL 3290561, at *6 (S.D.N.Y. Aug. 11, 2022) (rejecting argument that the DOE's failure to provide FAPE entitled plaintiff to reimbursement, and finding that "[p]laintiffs' conspicuous absence from the CSE meeting and the systematic, obstructionist behavior in which they engaged" supported a finding that equities weighed against them), *aff'd sub nom. Neske v. N.Y.C. Dep't of Educ.*, No. 22-2962-cv, 2023 WL 8888586 (2d Cir. Dec. 26, 2023) (summary order).

Conversely, a parent's full cooperation is an equitable consideration supporting full reimbursement. *See, e.g.*, *C.U. v. N.Y.C. Dep't of Educ.*, 23 F. Supp. 3d 210, 233-34 (S.D.N.Y. 2014) (affirming IHO holding that equities favored reimbursement where the "[p]arents were cooperative with the DOE, providing consents to evaluations[,] . . . participating in the CSE meeting in developing the IEP[,] . . . [and] diligently attempt[ing] to visit the placement" (internal quotation marks omitted)); *N.R. ex rel. T.R. v. Dep't of Educ.*, No. 07-cv-09648 (BSJ), 2009 WL 874061, at *6-7 (S.D.N.Y. Mar. 31, 2009) (finding that equitable considerations did not "bar the reimbursement of [student]'s tuition payments" where "the record [wa]s bereft of any evidence that [p]laintiff hindered [d]efendants' efforts to provide a FAPE or otherwise frustrated the placement process," and that SRO's contrary findings were unsupported by the record, which "reflect[ed] [p]laintiff's cooperation with the Department [of Education] throughout the placement process"). But the record before the IHO, the SRO, and now this Court simply does not evince Plaintiff's full cooperation, and neither the IHO nor the SRO erred in finding that her lack of cooperation supported a reduction in her reimbursement.[5]

---

[5] Plaintiff's argument that reimbursement requests "may not be denied absent a finding" of a parent's obstruction or lack of cooperation, Br. at 13, is misplaced here. There was such a

Plaintiff next argues that the SRO "ignor[ed] the fact that the DOE's failure to make any nursing services recommendation constitutes a clear denial of FAPE because the CSE's failure was based on the claimed failure of [Plaintiff] to submit Medical Accommodation Forms." Br. at 14. Aside from being difficult to parse, that sentence appears to confuse the issues. There is no question here that the DOE failed to provide a FAPE. The IHO clearly held as much, as the SRO recognized. *See* Dkt. 22-1 at R0013 ("The IHO then held that the [DOE]'s failure to recommend nursing services in the March 2024 IEP rendered the IEP flawed . . . and that due to the lack of recommendation for nursing services the [DOE] denied the student a FAPE for the 2024-25 school year."). Plaintiff, naturally, did not appeal that holding, and indeed the DOE expressly conceded it before the SRO, *id.* at R0014 ("The [DOE] concedes that it denied the student a FAPE for the 2024-25 school year[.]"), and concedes it again here, DOE Reply at 6 ("Defendants are not [arguing], have not [argued], and will not argue that they did not have an obligation to provide [W.R.] a FAPE."). And while the SRO acknowledged that "the IHO appear[ed] to have attributed the [DOE]'s failure, in part, to [Plaintiff] 'stonewalling' the CSE by not providing the requested medical information," Dkt. 22-1 at R0021, that finding does not amount to a suggestion (let alone a holding) that Plaintiff's non-cooperation "excus[ed] the DOE's failure to evaluate W.R." or constituted a "re-direct[ion] [of] the DOE's obligation to evaluate [W.R.] onto [Plaintiff]," Br. at 14.

Plaintiff makes two additional arguments that further illustrate the error of her approach before this Court and her apparent misunderstanding of the nature of equitable analysis. First, she appears to argue that her failure to provide medical forms was immaterial, because the CSE had W.R.'s medical forms from previous years that contained "the same information," and

---

finding here, and in any event, there has been no denial of reimbursement, only a reduction in Plaintiff's entitlement.

because the CSE "had ample opportunity to reconvene" but did not do so. *Id.* Second, she argues that the IHO's decision, as affirmed by the SRO, "is internally inconsistent," inasmuch as it found that the DOE should have provided a FAPE despite Plaintiff's failure to provide medical records, yet used Plaintiff's same failure to balance the equities against her in denying her request for full reimbursement. *Id.* at 15. For one, the SRO rejected Plaintiff's argument as to medical forms from prior years because, he explained, the old forms were insufficient substitutes: "[T]he only other medical accommodation forms in the hearing record were signed by [W.R.]'s physician in November 2022 and they d[id] not indicate a request for 1:1 nursing services." Dkt. 22-1 at R0020 n.9. More broadly, though, Plaintiff's arguments are beside the point. For purposes of balancing the equities, Plaintiff is not cleansed of her lack of cooperation by the fact that the DOE could (and should) have found a way around it. Indeed, "the third step of *Burlington/Carter* can be viewed as requiring district courts to consider the doctrine of unclean hands, which 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which [s]he seeks relief." *Ferreira*, 120 F.4th at 332 (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). Plaintiff's non-cooperation may not have been enough, as a matter of law, to justify the DOE's failure to provide a FAPE, but that does not mean it cannot be enough, as a matter of *equity*, to disentitle Plaintiff to full reimbursement — in other words, the buck stops with the DOE, but it started with Plaintiff, and that origin is an important consideration in determining whether the equities entitle her to full reimbursement. *See, e.g.*, *Donohue*, 2021 WL 4481344, at *10 n.3 ("Parent assumes that the equities are based on his actions somehow contributing to the denial of FAPE. But equitable considerations are focused on unreasonableness. And [the SRO] did just that: he found that parent's conduct, based on well-supported evidence in the record, warranted a reimbursement reduction.").

Therefore, the Court finds that the SRO did not err in affirming a reduction of Plaintiff's reimbursement based on its analysis and balancing of the equities. As to the precise amount of reduction, which Plaintiff does not expressly challenge, the Court defers to the SRO's decision affirming a 50 percent reduction, "because a thorough and careful equities analysis underlies his decision." *Id.* at *11. Plaintiff's motion for summary judgment seeking reversal of the SRO's decision on that ground is therefore denied, and the DOE's motion for summary judgment seeking affirmance of the SRO's decision on that ground is granted.

## II. Plaintiff Is Not Entitled to Additional Funding as Pendency

Plaintiff next argues, in the alternative, that she is entitled to full reimbursement for W.R.'s iBrain placement "as pendency." Br. at 15. The Court disagrees.

Under the IDEA's "'pendency' or 'stay-put' provision, . . . a child must remain, at public expense, 'in his or her then-current educational placement'" "while the administrative and judicial proceedings are pending and 'unless the school district and the parents agree otherwise.'" *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020) (first quoting 20 U.S.C. § 1415(j); and then quoting *Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158, 160 (2d Cir. 2004)). "The purpose of this provision is 'to maintain the [child's] educational status quo while the parties' dispute is being resolved.'" *Abrams v. Porter*, No. 20-3899-cv, 2021 WL 5829762, at *1 (2d Cir. Dec. 9, 2021) (summary order) (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014)). Accordingly, pendency "requires that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing." *T.M.*, 752 F.3d at 152 (alteration adopted) (quoting *Mackey*, 386 F.3d at 163).

Here, Plaintiff bases her purported pendency entitlement on:

> SRO Decision No. 23-266, issued on January 18, 2024, [which] is the last final administrative order relative to W.R.'s 2023-2024 school year, which established that the DOE failed to provide W.R. a FAPE during that school year, that iBRAIN was an appropriate unilateral placement for W.R., and that equities favored total funding/reimbursement of tuition, related services including nursing services, and transportation.

Br. at 17. She concludes that this pendency order for the 2023-24 school year ("SRO 23-266") also "establish[es] W.R.'s pendency program/placement during the due process proceedings relative to the DPC for the 2024-2025 school year" and, thus, required the DOE to fund that placement in full. *Id.* Plaintiff further argues that the DOE has "refus[ed] to fulfill its pendency obligations," and that this refusal "is actionable under 42 U.S.C. § 1983." *Id.* at 18; *see id.* at 18-20.

Plaintiff's pendency argument fails because the DOE has submitted evidence, which Plaintiff has not refuted, that it fulfilled the payment obligations that the IHO's August 20, 2024 pendency order imposed. That order specified that W.R.'s pendency program at iBrain included "[t]uition and related services" for the twelve-month 2024-25 school year, and that the DOE would provide transportation for W.R. for that period. Dkt. 22-2 at R0045. Separately, the IHO's decision noted that W.R.'s tuition for the 2024-25 school year was $335,744.00, and that "[n]ursing services [we]re billed at $333,608.00." *Id.* at R0034. The DOE has furnished evidence that it "caused to be paid $335[,]744.00 to comply with the IHO's Order directing the payment." Kapoor Decl. ¶ 4. Plaintiff ignores that evidence on reply, and instead merely repeats her assertion that the DOE has not provided any such funding. Pl. Opp. & Reply at 8 ("The undisputed record shows that the DOE has not fully funded pendency tuition, has paid none of

the pendency nursing costs, and has paid none of the pendency transportation costs; the DOE also has not provided transportation through its Office of Pupil Transportation (OPT).").[6]

Although the DOE does not claim to have paid for W.R.'s 1:1 nursing services, reading the IHO's pendency order in the context of iBrain's contract makes plain that the DOE was never required to do so, contrary to Plaintiff's assertions. *Compare* Br. at 17 (arguing that the DOE must fund "tuition, transportation, and nursing services, and including all late fees and interest accrued as the result of the DOE's delay in funding W.R.'s tuition and transportation per the terms of the relevant contracts with the respective service providers"), *and* Pl. Opp. & Reply at 8 (arguing that the DOE's pendency funding must include money to cover "1:1 nursing"), *with* Dkt. 22-2 at R0045 (IHO pendency order directing only that the DOE pay for W.R.'s "[t]uition and related services" and provide transportation). Indeed, according to a copy of the 2024-25 school year iBrain contract, iBrain's "[b]ase [t]uition [f]ee" that year was $213,000 and "include[d] the cost of an individual paraprofessional, and school nurse as well as the academic programming." Dkt. 22-23 at R0486. But base tuition "d[id] not include the cost of *related services*." *Id.* (emphasis added). For those services, iBrain charged "[s]upplemental [t]uition [f]ees" of $122,744, which "include[d] the cost of the Student's related services programming such as physical therapy, occupational therapy, speech-language therapy, vision education services, assistive technology services, music therapy, hearing education services and parent counseling and training." *Id.* at R0487. Thus, "[f]ull [t]uition" for the 2024-25 school year was $335,744, *id.*, which, as noted, is exactly what the DOE paid, Kapoor Decl. ¶ 4. These costs are provided under the section heading "Tuition, Deposit and *Related Service* Fees." Dkt. 22-23 at

---

[6] The argument further ignores the record evidence — supported by Plaintiff's own testimony, as the Court discussed above — that the DOE attempted to offer transportation services, and Plaintiff refused them.

R0486 (emphasis added). This contractual language removes any possible doubt as to the meaning of the IHO's pendency order requiring payment for "tuition and related services." *See* Dkt. 22-2 at R0045.

But to the extent the IHO's pendency order's precise requirements are unclear — and, again, they are not — Plaintiff could have appealed the order. She did not. Indeed, both Plaintiff and the DOE failed to properly appeal the IHO's August 20, 2024 pendency order, even though, as discussed, both parties appear to have taken issue with it in some respect. Plaintiff initially sought to contest it before the IHO by sending the IHO "an email containing argument that [the IHO] should change" it. Dkt. 22-1 at R0026 n.4. The IHO informed Plaintiff, in her order, that "[t]he proper remedy is to appeal." *Id.* On appeal, however, Plaintiff raised only vague arguments about the pendency order, without any citation to the record, and the SRO found those arguments so "broad and conclusory" as to fail to actually challenge the order; accordingly, pendency was "an issue not properly before [the SRO]." *Id.* at R0017 & n.7. Plaintiff also submitted "an email chain . . . as additional evidence" concerning pendency, but the SRO declined to consider it given Plaintiff's failure to properly put the issue before him. *Id.* Likewise, because the DOE sought "clarification" of the IHO's pendency order but "d[id] not specify what specific change" to the order it sought, the SRO declined "to disturb or further address" the pendency order. *Id.* at R0018. The IHO's pendency order has, thus, become final. *See Abrams v. N.Y.C. Dep't of Educ.*, No. 20-cv-05085 (JPO), 2022 WL 523455, at *3 (S.D.N.Y. Feb. 22, 2022) ("Pursuant to 20 U.S.C. § 1415(i)(1)(A) and N.Y. Educ. Law § 4404(1)(c), the IHO's pendency order is final, unless appealed." (alteration adopted) (quoting *Cohen v. N.Y.C. Dep't of Educ.*, No. 19-cv-03863 (LTS) (SDA), 2021 WL 2158018, at *2 (S.D.N.Y. May 26, 2021))); *J.L. v. N.Y.C. Dep't of Educ.*, No. 24-cv-01926 (PAE), 2024 WL 4882482, at *3 (S.D.N.Y. Nov. 25, 2024) (explaining that IHO's decision "was unappealed and final" and "thus

became [the student]'s operative pendency placement"); *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 698 (S.D.N.Y. 2006) ("As a matter of law, an IHO decision creates a pendency placement only if it is not appealed."); *Zayas v. Aviles-Ramos*, No. 25-cv-01880 (JAV), 2025 WL 3225016, at *5 (S.D.N.Y. Nov. 18, 2025) (finding that IHO's pendency decision was "not binding on either party" where it was currently subject to appeals to SRO, and "[t]hese appeals include a challenge by the DOE to the pendency start date"); *cf. Hidalgo v. N.Y.C. Dep't of Educ.*, No. 20-cv-00098 (JGK), 2021 WL 2827037, at *3 (S.D.N.Y. July 7, 2021) (holding that parent's appeal to SRO "did not make any reference to the findings that the IHO made throughout the opinion," and therefore "any arguments related to the findings made by the IHO were abandoned and those findings became final and binding"). And indeed, Plaintiff does not explain why, in light of her and the DOE's failure to properly appeal the IHO's pendency order, it did not become final and thus supersede SRO 23-266.

Therefore, the record before this Court establishes that the DOE has made all payments that the IHO's pendency order required it to make, and Plaintiff's motion for summary judgment seeking additional funds "as pendency," Br. at 15, is denied.

## III. The Sealing Motion

As a final matter, the Court addresses Plaintiff's sealing motion, to which the DOE does not object. *See* Dkt. 21 at 1.

The Second Circuit has articulated a three-step test for district courts to follow in deciding whether a filing can remain under seal. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). First, the Court must "conclude that the documents at issue are indeed 'judicial documents,'" meaning that the item is "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). Second, the Court "determine[s] the weight of that presumption,"

which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). Lastly, the Court is directed to weigh the presumption of public access attached to the document against the countervailing factors. *Id.* at 120.

"[D]ocuments submitted to a court for its consideration in a summary judgment motion are — as a matter of law — judicial documents to which a strong presumption of access attaches," and such documents "should not remain under seal absent the most compelling reasons." *Lugosch*, 435 F.3d at 121 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). Therefore, the first two *Lugosch* factors weigh against the motion to seal, and the Court focuses here on whether Plaintiff has demonstrated countervailing factors sufficient to overcome these factors. The Court finds that she has. The administrative record "contains identifying information about the minor student, . . . as well as confidential health information and other private details. Plaintiff has a compelling interest in maintaining the confidentiality of such information about her minor child." *S.W. ex rel. A.W. v. N.Y.C. Dep't of Educ.*, No. 22-cv-03592 (LGS), 2023 WL 5803415, at *10 (S.D.N.Y. Sept. 7, 2023) (maintaining administrative record under seal); *see also C.M. v. N.Y.C. Dep't of Educ.*, No. 22-cv-09307 (LTS) (SN), 2026 WL 2242208, at *1 n.1 (S.D.N.Y. Aug. 4, 2026) ("[C]ourts in this District typically permit sealing of the certified administrative record in IDEA cases given the strong privacy interests at stake — namely, the need to maintain confidentiality of a minor's sensitive personal and health information."). And while this Opinion cites frequently to the IHO's and SRO's decisions and the IHO's pendency order as filed in the administrative record, those decisions are also filed on the public docket in this matter. *See* Dkts. 1-3, 1-4, 1-5; *see also Cohen v. Aviles-Ramos*, No. 25-cv-01195 (JMF), 2025 WL 3715102, at *4 (S.D.N.Y. Dec. 22, 2025) ("The details of the

administrative proceedings below played little role in the [c]ourt's determination . . ., while the relevant information about the proceedings — the actual decisions issued by the IHO and SRO — are publicly filed as attachments to [the] [c]omplaint.").

The Court agrees with Plaintiff that the 1,300-page administrative record is "filled with confidential information," making precise redaction impracticable. Dkt. 21 at 2. But the parties frequently cite to and quote from the administrative record when discussing Plaintiff's and other witnesses' testimony before the IHO, and the IHO and SRO decisions also discuss that testimony. Plaintiff does not explain why she cannot file those hearing transcripts on the public docket with tailored redactions to protect sensitive information. The same applies to iBrain contracts, which can be redacted without rendering them "unintelligible." *Id.* Accordingly, while the vast majority of the administrative record shall be maintained under seal, the parties shall file public versions — with appropriate redactions applied — of the underlying hearing transcripts and the 2024-25 iBrain contract. (Those transcripts are currently filed as part of the administrative record at Dkts. 22-60 through 22-65; the contract is currently filed as part of the administrative record at Dkts. 22-23 through 22-24.)

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED. Plaintiff's sealing motion is GRANTED, in part. The parties shall file redacted copies of the underlying hearing transcripts and the 2024-25 iBrain contract by **October 5, 2026**.

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 18 and 21 and to CLOSE the case.

Dated: September 21, 2026
New York, New York

SO ORDERED.

Jennifer Rochon
JENNIFER L. ROCHON
United States District Judge